(69 Misc. Rep. 167.)

## TURNER v. BISSELL et al.

(Supreme Court, Trial Term, Hamilton County.   September, 1910.)

1. LOGS AND LOGGING (§ 3*)—TIMBER CONTRACT—CONSTRUCTION.

An agreement to sell all the spruce, balsam, and hemlock timber on a certain tract suitable for pulp or lumber, 8 inches in size and upwards at the stump, to be cut and skidded by a certain date about 20 months later, referred to a previous deed of the grantor to the state of the same tract, which reserved the wood 8 inches and over in size at the stump, to be cut in 7 years from the date of the deed, executed in 1900, which period would expire at the termination of the time fixed by the agreement for the removal of the timber; the agreement being made in 1906. The deed would bear the construction that the grantor reserved all the spruce and balsam which at the time of cutting within the seven years should be 8 inches or more in diameter at the stump, and the acts of the parties under it showed such to be their intent, and the parties to the agreement for purchase of the timber evidently understood that the timber purchased was that or a part of that reserved in the deed to the state. *Held,* that in view of the fact that the agreement was not made until after five years of the time for cutting limited in the deed had expired, and no mention was made of trees measured and marked in 1900, nor of trees 8 inches in diameter at that time, and in view of the fact that such trees will increase in diameter one-half inch to an inch and a half in seven years, the parties to the agreement will be deemed to have intended that the measurement of the trees should be made when cut at any time before the right of removal expired.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. LOGS AND LOGGING (§ 3*)—TIMBER CONTRACT—CONSTRUCTION—"AT THE STUMP."

The expression "at the stump," in the agreement, means the point at which the trees would be cut, and the custom in the vicinity, known to the parties, being to cut pulp wood 20 to 24 inches above the ground, that was the point meant by the phrase, which did not apply to a point 3 feet above the ground, as provided in Laws 1897, c. 220, § 7, under which the state acquired the land under the deed, providing that the owner of land to be taken under the article might, at his option, within the limitations thereinafter prescribed, reserve the spruce timber thereon 10 inches or more in diameter at a height of 3 feet from the ground.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

3. LOGS AND LOGGING (§ 3*)—TIMBER CONTRACT—CONSTRUCTION—TIMBER EMBRACED IN CONTRACT.

The agreement being to sell timber, to be cut and skidded, suitable for pulp or lumber, and the tract being in the wilderness, away from any market, where the transportation was by water by two routes, and such timber cut and skidded in such locality in the form of logs 12 or 14 feet in length only, the parties will be deemed to have intended that only such timber should pass as could be cut and skidded and so put in shape for market by one of the water routes mentioned; that is, so much as could be cut into logs of a size suitable for driving and not short logs obtainable from the top of trees, though of the prescribed diameter and suitable for pulp wood.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

4. LOGS AND LOGGING (§ 3*)—TIMBER CONTRACT—CONSTRUCTION.

Laws 1897, c. 220, § 7, in force at the time the deed to the state was executed, permitting spruce timber ten inches and over in diameter, three feet from the ground, and no other to be reserved, subject to the provisions of the act in relation to timber reserved after an appropriation of land by the forest preserve board and the deed not conforming to the statute, it reserving all the wood eight inches and over in diameter at the stump, but conforming to the subsequent law (Laws 1901, c. 652, amending Laws 1897, c. 220), the agreement for sale of the timber made while the later provision was unchanged will be presumed to have been intended to conform to the deed and statute.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

5. WOODS AND FORESTS (§ 8*)—CUTTING TIMBER — RESERVATIONS ON LAND SOLD TO THE STATE FOR FOREST PRESERVE PURPOSES.

Forest, Fish, and Game Law (Consol. Laws, c. 19) § 51, provides that the owners of land taken by the state for the forest preserve who have reserved timber thereon shall not cut over the land more than once. *Held*, that the owner is not thereby precluded from going within the limits of a former cutting if he has left a considerable tract upon which no trees have been cut; the intent of the statute being to prohibit a second cutting upon territory which has been once cut down to the prescribed limit of diameter.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

Action by Charles H. Turner against Dana Bissell and another. Judgment for plaintiff.

Breed, Abbott & Morgan, for plaintiff.
Frank L. Bell, for defendants.

VAN KIRK, J. This action is brought to recover the purchase price of timber standing on a certain 5,000-acre tract in the town of Long Lake, Hamilton county, being the same land which the plaintiff sold to the people of the state of New York by deed dated December 11, 1900, and recorded in the clerk's office of the county of Hamilton. By written agreement, dated April 20, 1906, this plaintiff sold to the defendants "all the spruce, balsam and hemlock timber standing and lying on about 5,000 acres of land heretofore sold by the party of the second part to the state of New York of the size of eight inches at the stump and upwards, which is suitable for pulp or lumber at the following prices: $1.50 per cord for the spruce and balsam and 25¢ per standard, Dimick's 19″ rule, for the hemlock. Said timber to be cut and skidded on or before December 11th, 1907." The payments were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to be made by check or note, with interest, in half yearly payments, the last of which was to be made May 1, 1908. The defendants agreed to take and purchase said timber upon the terms specified, and pay therefor as provided for in the contract.

A copy of the contract is attached to the complaint. The defendants have taken and paid for a part of the said timber. This action is brought to recover the purchase price of that part of the timber which was sold, but not cut and removed by the defendants from the said premises, and for which the defendants have not paid; the claim in the complaint being for 5,000 cords of spruce and balsam at $1.50 a cord, $7,500, and 3,500 standards of hemlock at 25 cents each, amounting to $875, making a total of $8,375, with interest from May 1, 1908.

The agreement or contract of sale has given rise to some differences of opinion between the parties, and is subject to construction. One important matter as to which they differ is whether or not the minimum diameter is to be determined as of the date of the deed to the state or when the timber is cut at any time within the seven-years limit. The contract refers to the deed to the state of December 11, 1900, and a copy of that deed was furnished by the plaintiff to the defendants. It contains this:

"Reserving, however, from the operation of this conveyance all the soft wood now standing, being or lying upon said lands and premises (with all the rights and privileges necessary for the removal of the same) down to and including the diameter of eight inches at the stump, same to be all cut within seven years from the date hereof; and, in case any of such soft wood shall remain uncut at the expiration of said period of seven years, then the same shall pass to and become the property of the party of the second part."

The parties evidently understood that the timber purchased by the defendants was that, or a part of that, reserved to the plaintiff in said deed to the state. Said deed is important in determining the intention of the parties to the contract. We are not called upon directly to construe the deed, and the parties to the deed are not before the court, but we do use the deed in construing the contract. The deed is susceptible of the construction that Turner reserved all of the spruce and balsam which at the time of cutting within the seven years was eight inches or more in diameter at the stump. The acts of the parties under it show this to be their intent. The contract was not made until after five years of the time for cutting, limited in the deed, had expired; yet no mention is made of trees measured and marked in 1900, nor of trees eight inches in diameter in 1900, and, unless the trees had been measured and marked in 1900, it was not possible to know in 1906 which of the trees of the smaller diameters were eight inches in 1900. Also both parties have taken the count and measurement of trees in preparation for trial to show the amount for which defendants are liable, and each has measured down to eight inches at a time after the seven-year limitation had expired. Under the proof, some of the trees which now measure eight inches and a small fraction did not measure eight inches in 1900, because it is shown that in the space of seven years such trees will increase in diameter from one-half inch to an inch and a half. The parties to the contract intended

that the measurement of the trees should be made when cut at any time until December 11, 1907. That the parties were justified in such understanding is further upheld by the wording of the statute (Laws 1897, c. 220, § 8; which has since remained in the statute, Forest, Fish and Game Law [Consol. Laws, c. 19] § 51), which provides: "Such lands shall not be cut over more than once." This, applied to the land in question, means that though it may be cut over in any year of the period limited down to eight inches, having been once so cut over, it may not be later again cut, though other trees had grown to eight inches in the meantime.

The second point of dispute is as to the place of measurement, or what is meant by the words, "at the stump." The plaintiff contends that the expression means at the top of the swell of the root. The defendants contend that under the statute (as it existed when the deed was made, Laws 1897, c. 220, § 7) the measurement must be made three feet above the ground, and refer to this law, which provided that:

"The owner of land to be taken under this article may at his option, within the limitations hereinafter prescribed, reserve the spruce timber thereon ten inches or more in diameter at a height of three feet from the ground."

Later in the same paragraph it was provided:

"If land is acquired by purchase, the spruce timber and no other may be reserved by agreement between the board and owner subject to all the provisions of this act in relation to timber reserved after an appropriation of land by the forest preserve board."

The reservation in the deed of December 11, 1900, evidently was not made in compliance with this statute; for, under the statute, spruce timber only could be reserved. In the statute the limitation does not refer to the stump, but refers to a height three feet above the ground; and it would be a very strained construction of the statute to say that the two expressions, "three feet above the ground" in the statute, and "at the stump," in the contract, meant the same thing. The expression "at the stump" in the contract means the point at which the tree would be cut. The custom in the vicinity in question, known to the parties, was to cut pulp wood about 20 to 24 inches above the ground; and the diameter of the trees should have been measured at from 20 to 24 inches above the ground.

There is another question of construction of the contract, namely: What timber was purchased and to be paid for? It is conceded that all the timber was not purchased, for there is the limitation, "suitable for pulp and lumber," so that cull timber, though of sufficient size, is not counted by either party. But did the parties intend to include in the contract all the sound soft timber of sufficient size, whether marketable from the premises or not? When plaintiff reserved the timber in the deed to the state, so much of it was valuable to him as he could get to market. Such only was valuable to the defendants also. Both parties to the contract were experienced lumbermen. The lot was in the wilderness, away from any market. The means of transportation was by water, driving the logs out from the timber. That this was in the mind of the parties is evidenced by the contract. It

provides that, if consent is not procured to put the logs into Moose pond or Big brook, then the defendants should take only such as could be put into Long lake and Clear pond. That is, the defendants were not to take timber which could not be cut into logs and driven to market along one of the water courses. The contract further discloses that the plaintiff insured to the defendants the right to remove the timber "so cut and skidded as aforesaid at any time prior to April 1st, 1908." The parties, therefore, contemplated a purchase and sale of such timber only as could be "cut and skidded" in the form of logs. In this locality such timber was cut and skidded in the form of logs 12 or 14 feet in length only. I have concluded, therefore, that the plaintiff intended to sell and the defendants to purchase such timber only as could be cut and skidded, and so put in shape for market by one of the water routes mentioned; that is, so much as could be cut into logs of a size suitable for driving. This was recognized by both parties at the time of trial, for each party inquired as to the number of logs a tree would cut, the defendants using 14 feet logs and the plaintiff 12 feet logs in their inquiries; and each party estimated the number of logs in the timber on the tract.

The question remaining is: What amount is the plaintiff entitled to recover from the defendants. The defendants do not dispute that something is due. Each party has offered evidence intended to show the amount due. Each party has counted the trees and they have used a similar method in making the count, as follows: Three men went upon the lot, one to keep the tally, two to measure the trees. As a tree was measured, the diameter was called out to the one keeping tally. He repeated it back for accuracy, and set down the diameter of the tree. Where there was no actual boundary to the strip being counted, as a road or otherwise, the outside lines of the strip were marked by blazing the trees. Having crossed the lot, they turned and counted the next strip through, and so on until the whole lot was covered. In this way the number of trees suitable for pulp wood and for standards was recorded and the size of each. The plaintiff counted 28,578 spruce and balsam trees and 2,132 hemlock, and defendants counted 17,609 spruce and balsam and 1,349 hemlock. The plaintiff measured just above the swell of the root. The defendants three feet above the ground.

To determine the number of standards and of cords of pulp wood, different methods were used by the two parties. For plaintiff, witnesses were called who had gone through the lot and looked over the timber generally. They testified that such a proportion of the trees would cut one log, such a proportion two logs, such a proportion three logs. From this estimate and the count of trees a schedule was made, showing the number of trees, the size and number of logs in each tree, each log 12 feet in length, from which data the plaintiff's witnesses have calculated the number of cords of pulp wood and the number of standards, the result being about 5,000 cords of pulp wood and about 3,272 standards. For the defendants the men have estimated at the time of measurement the number of logs 14 feet long, with top 5 or 6 inches, contained in each tree, and reported those to the tallyman,

who so recorded each tree. From this information the defendants' witnesses have computed the number of cords of pulp wood and standards upon the lot to be 1,618.48 cords of pulp wood and 1,202.04 standards.

Not only is there a difference in the estimate of the number of logs, but there is a difference in the method of calculating the number of cords of pulp wood on the lot. While the plaintiff's witnesses have scheduled the trees and estimated them as one log, two logs, and three log trees, they state that, in calculating the amount of pulp wood they have calculated not only that which could be put into 12-foot logs, but have calculated all of the tops making short logs down to 4 inches in diameter at the small end. The defendants in their calculations have calculated the cords of pulp wood only upon the number of logs 14 feet in length that could be cut from the trees; and the short pieces, although of sufficient diameter, have been discarded. Under the construction which has been adopted of the contract, the method of computation pursued by the defendants' witnesses is the correct one. Under the plaintiff's method of calculation, short logs, although only two or three feet in length, have been computed, while the parties as above held did not contemplate the inclusion of those short logs. It is not very important that one party has used a 12-foot log and the other a 14-foot log. While some trees would cut two 12-foot logs which would not cut two 14-foot logs; on the other hand, if a tree would cut under the length of two 12-foot logs, then the party who measures for 14-foot logs would account for the more pulp wood. The defendants' method of computing the number of cords of pulp wood and the number of hemlock standards was correct.

It appears from the above that the plaintiff has not measured the diameter of the trees at the place specified in the contract, he has not made those measurements within the time limited in the deed or the contract, and he has included short logs in his calculation of cords of pulp wood. These errors have resulted in the count of too many trees and of too much pulp wood. No allowance is made for these errors, nor is evidence furnished on which the court can more than guess at an allowance which should be made. The burden of proving the amount of pulp wood and standards to be paid for by the defendants is upon plaintiff, and he had failed to meet this burden. But the defendants have counted the trees upon this lot and computed the amount of pulp wood and lumber left to be paid for; and, although they have not measured at the right place upon the tree, their evidence stands as an admission that there is at least the number of trees counted by them on the lot to be accounted for by them, and, defendants' method of computing the number of cords of pulp wood and standards being correct, the plaintiff is entitled to recover therefor.

Defendants ask that the amount of the recovery be reduced by reason of the provisions of the statute placing restrictions upon the reservations of timber in deeds to the state, and forbidding that a lot, the deed of which contains reservations, should be cut over more than once. A curious circumstance is disclosed by the deed, the contract, and the statutes. The deed evidences a purchase by the state from

plaintiff December 11, 1900. At that time the statute (Laws 1897, c. 220, § 7) permitted "the spruce timber and no other" to be reserved, "subject to the provisions of this act in relation to timber reserved after an appropriation of land by the forest preserve board"; that is, subject to the restriction that the spruce must be ten inches or more in diameter, three feet or more above the ground, and the land could not be cut over twice. This was the statute in 1900, when the deed was drawn. The deed does not conform to this statute, however, but does conform to an act passed in 1901 (Laws 1901, c. 652) amending this act of 1897. The deed is so much in accord with the act of 1901 as to disclose a remarkable foresight. A further fact renders this "accord" the more surprising because the act of 1901 allows soft timber, which includes hemlock, to be cut down to eight inches at the stump, while it is well known that hemlock is used for lumber only, and is not valuable unless about 13 inches on the stump. Lumbermen would hardly have suspected such a provision would be put in the statute. Still, within a few months after the deed was drawn, the act of 1901 (chapter 652) was passed, allowing the reservation made in the deed. When the contract was made, April 20, 1906, this latter provision was unchanged; and, if the statute had been examined, it would have been learned that the deed conformed to the statute as it then stood. And it is fair to presume that the contract was intended to conform to the deed and statute. The kind of timber reserved and its diameter are plainly expressed in the contract. The state had never had a conveyance of it and could not, if it would, take this property from plaintiff without compensation. This is not an action in which the state is endeavoring to avoid an illegal deed, and the validity of the deed cannot be questioned here. No reduction, therefore, can be made on this account. Nor can one be made because of the provision, "such land shall not be cut over more than once." Whatever construction be put upon the contract in this respect, the evidence is too uncertain for the court to act upon. It is not claimed that the entire lot had been cut over by plaintiff. It is for defendants to show how much of the timber counted is upon that part which has been cut over. The evidence fails to disclose satisfactorily the reduction that should be made, if any, on this account, from the count of trees above found. It appeared in the testimony that there were considerable pieces of territory from which no soft timber was cut by Downey, although he had cut the soft timber around these pieces; so that there were considerable tracts of entirely uncut soft timber included within the limits over which Downey had cut. The statute does not mean that under a reservation the owner cannot go within the limits of his former cutting, if within the outside limits of the same he has left considerable tracts upon which he cut no trees at all. The intention of the statute is to prohibit a second cutting upon the territory which has been once cut down to the prescribed limit of diameter. A second cutting does harm to the timber to be left standing. While Mr. La Fountain testifies that 65 per cent. of the trees counted by him were within the limits cut over by Downey, his testimony means, in the light of the other testimony in the case, that he counted in this 65 per cent. considerable

areas from which no trees whatever were cut. The timber on such areas cannot be excluded under the statute, and the court has no means of determining what proportion of the trees counted is within the territory actually cut over by Downey. There is testimony that Downey cut over from 2,000 to 3,000 acres, and that there were some 2,000 acres or more which had not been cut over. Mr. La Fountain in his testimony cannot have meant, it would seem, that 65 per cent. of the trees counted were in the territory which Mr. Downey had actually cut over. In coming to this conclusion I realize that the soft timber was scattered through hard timber and that no part of the 5,000 acres was cleared of hard timber.

The plaintiff is therefore entitled to judgment for $2,728.23, with interest from May 1, 1908.

Findings and a decision may be prepared accordingly.

Judgment for plaintiff.